Good morning. We have four argued cases this morning. The first of these is number 145140, Tinton Falls Lodging Realty v. United States. Mr. Doherty. My name is Lee Doherty. I'm here on behalf of Tinton Falls. This case is a appeal from the Court of Federal Claims on a bid protest which was filed as an appeal of an SBA Office of Hearing and Appeals decision. Counselor, before you go further, let me ask you a preliminary question. Do we have jurisdiction in this case? I mean, do you have standing? I believe we do, Your Honor. I assume the court is referring to whether or not Tinton Falls specifically has standing? Correct. That matter was argued fairly extensively under a motion to dismiss in the Court of Federal Claims. What the court determined in that case, and I believe it's the correct call, is that because Tinton Falls does stand as any other offeror, if the court were to reverse the lower court's decision and find that, in this case, DMC was, in fact, in violation of the ostensible subcontractor rule and was a large business, there were no other small businesses available for this award or that submitted proposals for this award. Therefore, it goes back to the beginning, back to the agency to determine what their procurement plans would be, in which case, Tinton Falls would stand as any other potential offeror would stand, and that was the determination of the lower court. Are you saying that if it's rebid, that it would be an unrestricted bid, that it would be open to everyone? That would be our argument, Your Honor. I don't know that we need to get there, but our argument would be that this was set aside for small businesses. There were no other small businesses left other than DMC. We've argued that DMC is not a small business either. Therefore, there would be no other small businesses that are available for this award. What evidence is in the record that there's no other small businesses? What's that, Your Honor? What evidence is there that there are no other small businesses? No other small businesses submitted proposals. Well, would the competition be opened up so that additional small businesses could bid on it? What would happen if the procurement were set aside? If the procurement was set aside, in this case, again, if we were to follow the same procurement plan as was followed in the first instance, and that is it was set aside for small businesses, I would submit that there are no other small businesses available, unless there are other small businesses out there that did not submit proposals the first time around. That's a possibility, though, right? It is a possibility, but it's just as equally a possibility it wouldn't be. I guess the point is you don't need to ... All there needs to be is a chance that they will strike down the small business set-aside requirement and have an open bid. That would make you eligible on a second round. That's correct, Your Honor. Again, the facts of the case would support that proposition because there are no other small businesses that can be oriented. On this first round, there were eight bidders, right? That's correct. DMC was the winning bidder, but it was almost by default because the other seven got knocked out. That's correct, Your Honor. You're trying to knock out DMC. That's correct, Your Honor. Our position is that DMC, like several of the other companies, including my client, is not a small business. Therefore, there are no small businesses available to perform this contract. Again, Your Honor, to go back to your question. Couldn't they re-bid on a restricted basis and attract other bidders that are small businesses? That's a possibility. They would have to go back, do the market research, follow all the relevant regulations to determine whether or not there are two or more small business offerors that are eligible. Again, the market research that was done the first time indicated these eight companies, seven of which have been knocked out. Well, I ask that because in our case of Galen Med Associates v. United States, we said that the claimant, you have to show that there's a substantial chance that you would receive the contract award, but for the error, it seems to me that your substantial chance has a little bit of speculative tint to it. And again, Your Honor, I would submit that we would have just as much a substantial chance as any other potential offeror. We were an actual offeror in this initially until found to be a and start back from the beginning, including potential market research of whether or not there are in fact small businesses eligible to do this. And if they don't have to bid it on a restrictive basis if their market research finds that there are not small businesses available to do it or more than one, right? Then it would be open to large businesses. And again, then all of those that were knocked out would then be eligible to compete. And in terms of the merits here, isn't it pretty clear from the solicitation that the contractor is supposed to find hotel rooms from subcontractors rather than to provide hotel rooms in hotels that it itself owns? I don't find that in the solicitation, Your Honor. Again, if the solicitation itself is viewed in its totality, this was a solicitation for two things, hotels and transportation. That's how the solicitation is titled, solicitation for hotels and transportation. The bulk of that solicitation, overwhelming bulk of that solicitation is for hotel rooms. My client owns hotels. They submitted under the NAICS code for hotels. Again, the NAICS code selected for hotel rooms, not the management coordination piece. So, in viewing that solicitation, what was requested, the awardee's proposal, 82 of 91 pages were for hotel rooms. I guess just following up on Judge Dyke's question, when I read the solicitation, it seems to contemplate that the contractor, the awardee, is not necessarily going to own and control all the different hotels. It's like there's got to be a primary hotel. And then the contractor also has to make sure that there are overflow hotels that can also be requested in the contract. But I think in order to go to that point, we're assuming that the solicitation did not contemplate small business hotels. And again, when the market research was done, the contemplation was that there are small businesses who own hotels who are able to provide these services. Market research? Where is that in the record? What's that, Your Honor? I thought you said that the market research that was done showed they were looking for small businesses that owned hotels. That would be my argument, Your Honor, because they set it aside for small businesses. Well, yeah, but where in the record does it show that the market research looked for small businesses that owned hotels? Again, Your Honor, what I would... No, no. Try to answer my question. I thought you said that the market research showed that they were looking for small businesses with hotel ownership. Where do I find that in the record? I believe the solicitation, Your Honor, indicates that. It doesn't per se say we want small business that own hotels, but it lays out a small business NAICS code for hotels, not management, not coordination, not services for hotels. But was there a market research study done in this regard? It's required by regulation, and I think it's been mentioned. I don't think it's part of your record, but there was market research done. Again, my client... Is it in the original record, the market research? It is, Your Honor. And again, my client was part of that determination, but subsequent to that was found to be large. There were, at the time, eight companies determined to be small businesses who could manage this contract. Seven of them were eliminated, leaving one. Well, apart from the code, what is there in the record that suggests that they were contemplating hotel ownership by the contractor? I don't necessarily believe that it had to be contemplated that the contractor winning this award could not subcontract out to other hotel rooms. But in order to not violate the ostensible subcontractor rule, that contractor, in my opinion, has to contract with small businesses. In this case, this contractor contracted with the largest lodging company in the world, not a small business. So I believe reading the solicitation, the solicitation contemplates that this is a small business set-aside, that these revenues are meant to go to small businesses. Whether or not the contractor owns the hotel or subcontract that to other small business hotels that meet the technical requirements. I believe two of the offerors were not excluded for because they were large, but because they were technically unacceptable. They were too far or there were other requirements that they didn't meet under the hotel requirements. So again, I believe that the solicitation as read as a whole would indicate that this is meant as a small business set-aside. But if it was contemplated that they might subcontract the hotel rooms themselves to someone else, doesn't that suggest that the primary and vital requirement of the contract was arranging for the rooms? I would not see that, Your Honor. I would not agree with that. If you look at, I think that those services are obviously important services. They may even be vital. But are they the primary services? And that, historically... How can they not be the primary if there's no information as to what the actual requirements are? It's unknown how many troops are involved, how many meals are going to be involved. But it isn't the possibility that there could be 10,000 troops or one troop. There's a fairly narrow range of what is required under this contract. Although it is an indefinite quantity-type contract, there's a fairly narrow range of what this is. There is no coordination needed until the primary hotel has an overflow. So, in fact, there could be almost no coordination on this ever if there's ever an overflow of that primary hotel. So, there's a lot of emphasis been put on bits and pieces taken out of context, out of the solicitation. But in fact, the overwhelming majority of this contract, this solicitation, is geared specifically for the hotel rooms. This is a fairly simple contract. It's a simple task. Is there any case that says when a large percentage of the value of the contract is performed by a subcontractor, then that necessarily violates the ostensible subcontractor rule? That gets us back to the primary and vital determination. If it's determined that the large business is doing the primary... The answer is no, right? I mean, there isn't a case. There isn't none. There is not any, Your Honor. There's a series of cases, which I think all of us have cited in our briefs, that have decided this based on the facts specific for each case, one way or the other. But there's not a set number to say, well, if it's more than 81 percent, then they absolutely can't do it. But if it's 79, they can. In this particular case, the area office found that 80 percent initially was going to the large business. The SBA enjoys a lot of discretion and significant deference here in interpreting the solicitation, right? I believe they do some deference, Your Honor. Although you've got some things you can point to in the solicitation that might weigh in your favor, it appears that there are other parts of the solicitation that weigh in the SBA's reading of it. Is that also fair to say? That is fair to say, Your Honor. I think if you look at the totality of that solicitation and just as importantly, the awardee's proposal of what the awardee was proposing and what the solicitation required, if management and coordination is primary and vital, the primary, it may be vital, it may be important, it may be necessary and it may be impossible to separate it from this contract. But if it is the primary, then I think the question is, well, why wasn't it evaluated? If it was so important, if having that management team was so important, why wasn't the management team a key personnel in the contract? Why wasn't it evaluated? Why wasn't coordination? But if we give, do we give Chevron deference to the SBA's interpretation? Absolutely, Your Honor. People in baseball deference, I guess, since it's a regular... I mean, the regulations here are SBA regulations, correct? That's correct, Your Honor. And we have a decision by the SBA administrative judge making a determination that this satisfies the requirements of the regulations, right? That's correct, Your Honor. So wouldn't we give that deference, I guess it's not Chevron deference, but rather Cleveland baseball deference or our deference. Don't we give deference to the interpretation rendered by the SBA under that line of Supreme Court cases? I think if this court finds that the decision by the SBA was not arbitrary, capricious of discretion, abuse of discretion, or otherwise contrary to the law, then yes, then this court has to find it. But the court, under the standard review, which I don't think is disputed, this court has to look at whether or not that decision was rational. And again, as we've argued in our brief, and I think the facts support, this is the end of an irrational line of cases that has been taken to the point where I don't know where that ends. To go to, Your Honor, your point, where is that number? If they'd done 95% of the work, would that be the number? If it were 90%, would that be the number? The only case cited contrary was one where the SBA overruled because 100% of the work was going to a large business. So I don't know where that number is. But I think this is too far. This has gone too far in allowing a large business to take advantage of a small business set-aside that was meant to support small businesses. Okay, you're into your rebuttal time. Do you want to save the rest of it? I will save, Your Honor. Thank you. Mr. Williams. It's actually Mr. Yale. Mr. Yale. Okay, we've got the wrong quarter on our sheet here. Go ahead. May it please the Court, Nathaniel Yale arguing on behalf of the United States. Contrary to the assertions made by... Mr. Yale, you didn't raise the jurisdiction question in your brief, right? Correct. Is that because you feel like there is a substantial chance that if this, you know, we were to reverse here, that Dinden Falls would be able to be awarded the contract? We made the jurisdictional, not the subject matter, jurisdictional argument, but the standing argument below along the lines of what you were just discussing. But what about now? We didn't raise it in our brief. You know, I think we made that decision. We felt like there was a strong basis to affirm based upon the merits of this case. And we felt that, you know, we didn't pursue the standing argument. My recollection is that in Impreza decision by this Court, we held that if the contract had to be rebid and the challenger could rebid on the contract, that that was sufficient to confer standing. Do you remember that case? That was a case that certainly was discussed at COFSE. I do remember that case. I think below, we attempted to distinguish that case based upon the fact that I feel like in Impreza, if there was a re-solicitation, the only thing wrong with the individual, the entity that had been, you know, kicked out before was that they had not filed a complete proposal. So if it went out to open and, you know, complete open competition, they could fix their proposal and come back in. This case is a little different because, obviously, Tenton Falls has been ruled not to be a small business. You know, if the contract is re-solicited on a small business basis, they would still be ineligible. What would the criteria be for determining whether it was re-solicited on a small business basis or not? Well, additional market research, they would have to go back to the beginning and do another round of market research. Certainly, I think... In any event? And if it's back to full and open competition, if there's no offers remaining, which would be the case, if DMC was no longer the awardee, then, you know, the agency would have the obligation to evaluate based upon the market research, which would have to be conducted, whether or not this can be set aside for a small business or not. Would they evaluate whether to set it aside or whether to open it up with no restrictions? What's the first avenue that the SBA would look at? Well, first, they would conduct the market research to determine whether or not there are two or more small businesses would likely... Okay, so assuming that it's re-bid, would Tenton Falls be a qualified bidder at that point? Well, I mean, I think for the reason... They've already been determined as to this solicitation to not be a small business based upon affiliation. The answer is no, although I think whether or not an entity is a small business or not is generally determined on a, you know, a solicitation-by-solicitation basis, but likely, given the fact that the solicitation is going to be almost the same, likely they would certainly not be considered a small business for a set aside. So to say that at this point, to say that they would re-bid on an unrestricted basis, it's speculation. I mean... It is speculation. That's certainly the argument that we made below. Certainly, there's a lot of speculation, I think, on both sides. The argument we made below is that, well, we can speculate. Obviously, the plaintiff has the burden to actually demonstrate standing. Given that potential for speculation, if not outright speculation, let's call it a potential for speculation, would you say that under Galen, that that's a substantial chance, that they're showing that they have a substantial chance to win if it's re-bid on a restricted basis? Well, I mean, the Galen case is not a case that came up below. You know, as far as a substantial chance, I mean, I think, given the fact that there is a large measure of speculation, I think it would be difficult to determine whether or not it's a substantial chance. They would have a chance. It's all relying on the fact that this would no longer be a set-aside contract. But it could only be a set-aside contract if there were market research conducted that found that there were two or more small businesses available to bid on the contract, right? Correct. Which would be... Those small businesses would be owning hotels, right? Given if the court ruled a certain way, is that... Yeah, I guess we have to assume that the court rules against your position on the merits, then would they have a substantial chance? I guess that has to be the test, right? Well, I mean, I think that there... I mean, if there is... I think that's correct. Do you want to talk about the merits? Sure. There's been a lot of talk about the solicitation. I think contrary to the assertions made by Tintin Falls in this case, the SBA analyzed the solicitation and pointed to a number of sections that support its reading. There's the scope of work. There's the special requirements section. There's the past performance section. Certainly, Tintin Falls has pointed to certain aspects of the solicitation that mentioned hotels. But certainly, in evaluating what the SBA did, I think they've certainly pointed to enough in the solicitation. And frankly, reading it, I think the contract makes sense that what the Navy's military sealift command, what they were... The background to this is, they have a training in Freehold, New Jersey. Civilian mariners come, but it's unclear from week to week how many are going to come. Some weeks, it could be one. Some weeks, it could be 25. Some weeks, it can be 75. And I think the solicitation reflects that fact and certainly leads to the conclusion that coordination and management is the primary and vital requirement of this contract. And so, certainly, Tintin Falls has a different reading of the solicitation. They're certainly pointing to different parts. But I think that there's several aspects of the solicitation that weighs in favor of OHA's determination. I would also say that, seemingly, by Tintin Falls' argument, what they're looking for is simply a rule, a straight-line rule that, under the ostensible subcontractor rule, that the primary and vital requirements is simply determined by quantity. That, essentially, if somebody is... If one subcontractor is doing the most amount of work in terms of receipts under the contract, that's it. That's the whole ballgame. And I just don't think that there's any cases supporting that. And, frankly, as Your Honor pointed out, this is an SBA regulation. And as an SBA regulation, it's going to the heart of what the SBA does, trying to determine who or who should not be considered a small business for procurements. Do you think that's what happened here? Do you think there was a formal interpretation of a regulation in this case? Well, I certainly think that there, in terms of how OHA analyzed it, I think that they looked at the ostensible subcontractor and interpreted the regulation as to how to determine the primary and vital requirement. And the way they did that was to say, well, first, we have to go and look at the solicitation. Yeah, they looked at the requirements of the solicitation and said, well, we think it's X, not Y. It's the primary and vital requirement. It's clear to me that that's the same thing as saying when we say primary and vital requirement in the regulation, we mean, you know, X. Well, they were certainly tying it to the regulation. I mean, I think that there could be several possible interpretations of that regulation. I think, as I mentioned before, one potential interpretation would be just some sort of a straight quantity determination in terms of- Which is the challenger's argument. Right. And they're rejecting that interpretation of the regulation that quantity governs, right? Correct. But OHA interpreted its own regulation and found that that's not, you know, you do not have to defer to simply quantity. You're looking at the solicitation as well as quality factors, which I think is pervasive throughout the case law. Could there be a tipping point though? What if the contractor did literally 1% of the value of the contract and the subcontractor doing 99% of it? Well, as Mr. Dougherty pointed out, there is at least one SBA OHA case where the sub was performing 100%. Certainly that seems to be too much. You know, here- Your point is that quantity doesn't determine it. Correct. Correct. They have to be doing this. The small business has to be doing something under the contract, which is primary and vital. Certainly. And if the SBA wanted to have a regulation that specifically said that quantity was determinative, they certainly could have done so. Well, then why didn't the SBA issue a solicitation that focused on management and coordination as opposed to lodging and transportation requirements? When it says lodging and transportation requirements, you're looking at room size, type of buses, capacity of buses, all the requirements in order to fulfill the contract. And yet the interpretation turns around and says, no, even though that's what the solicitation focuses on, that's not what we're looking for. We're just looking for a coordinator. Well, I believe you said the SBA, but so the Military Sealift Command issued the solicitation. I guess I don't agree sort of with, you know, sort of the reading of the solicitation. I mean, I think the reading that OHA gave to those solicitations certainly points to several aspects that go towards the coordination and management point. Certainly we're not contesting the fact that it mentions requirements for hotels, but I think read as a whole the underlying purpose that, you know, that the Navy was contracting for was really coordination and management. And as I said before, part of it has to do with the indefiniteness and the fact that from week to week, it's just unclear how many civilian manors are going to show up for this training. And so really coordination and management are key to the contract. Okay, no other questions? To the extent I have any more time, I'll yield it to... Okay, well, no, you were actually out of time. Thank you. Thank you, Mr. Yale. Mr. Williams. Good morning. John Williams for DMC Management Services. I'm going to use my time to talk about standing. It was something that we did affirmatively raise in our brief. We do not believe that Tenton Falls has standing because they don't have a direct economic interest in this procurement. They don't have a substantial chance of winning a hypothetical re-competition. And I think there's two reasons for that, one of which we've been talking about already, the speculation about whether or not a new competition would be reserved for small businesses. And that's the best we can do to speculate whether it would be reserved or not reserved. You don't know one way or the other, except that what you do know is that every small business who bid on this contract is either not a small business or is out. Well, I think that... Let me make a clarification on that. There are two types of affiliation. Some of it is contract specific. Some of it is ongoing. The type of affiliation that's alleged against DMC, ostensible subcontractor affiliation, is contract specific, meaning that they could write a new arrangement for a new solicitation and not have the same affiliation they may be found to have for this procurement. Other types of affiliation are based on common ownership and management, what they consider to be ongoing affiliation. The Tinton Falls and their affiliated offerors, they were eliminated based on ongoing affiliation. They would not be eligible to bid for any future small business project unless they made major restructuring to the way their companies are set up. DMC... So the point I'm making is that some small businesses that might have been eliminated from this procurement could turn around tomorrow and legitimately bid as small for a new procurement that might be... A new procurement under a different solicitation? Right. Well, why do you assume that? I mean, there's no reason to think the solicitation would change. What the government suggests is they do new market research to see whether two or more small businesses who are likely to bid on this solicitation. Well, I suspect they actually would change the solicitation if the ruling went against them to make clearer in the solicitation that what they really want is management and coordination because that's what they've said that they're looking for here. And I think the issue may be as an imperfectly drafted solicitation that focuses, I think, more simplistically on what do we need for the rooms? What do we need for the buses? What are the minimum requirements of AAA rating and phone numbers? But what you're saying is that in a situation like this, there would never be anyone who had standing unless that person qualified as a small business under the contract, under the solicitation, right? Well, I think there's a... No, I think there's a real difficulty for a business that is large to say, I have standing to challenge what has been a set-aside procurement. They tried to participate in it as... But why would they be doing it if they didn't think they had a substantial chance of getting the contract? Well, that's an interesting question because, in fact, they bid this procurement not to win. What we argued in our brief and what the record demonstrates is that they submitted... There were four affiliated bidders. Tenton Falls, the incumbent contractor, a company called Molly, and two other firms. And they bid it. The same person signed all the proposals, and they bid it in a way that Molly would be the lowest price. This is an LPTA, lowest price, technically acceptable proposal. So in submitting proposals... I don't think you're answering my question. Why would they bother to appeal here? What motive could they have other than wanting to secure the contract? Well, I would say that it's for their affiliate, Molly, to be able to pursue the work. Molly was the incumbent for this project. Molly was put forward as the lowest bidder among the four affiliated offerors for the current solicitation. They haven't... You're saying Tenton is bound somehow to have, you know, just as unpersuasive of a bid the next go around? Well, they're not bound. They're not... No, they're not bound. But necessarily, there has to be some speculation about what would happen in a hypothetical re-competition. And our position is that the way they approached the current procurement should have some bearing on our view of their chances in a hypothetical re-compete. Can we say they have a substantial chance of winning a hypothetical procurement when we don't know that it'll be full and open and we have a demonstrated history by them of not trying to submit the lowest price, of having their affiliate, Molly, submit the lowest price? I don't think that qualifies as a substantial chance. What's the likelihood that this will be set aside again in round two, given that the original set aside failed, assuming that there's no qualified small business bidder? Well, we only need two small businesses. Right, and this go around, there were zero. Well, no, that's actually not correct. There were some small businesses that bid and were eliminated for other reasons. So they could conceivably collect their proposal. There was no small bidder that was capable. That survived this time. They weren't disqualified because they weren't competent or qualified to bid, correct? They didn't submit a perfect proposal. So in a re-bid, they can submit a perfect proposal. They could compete. They can learn from the first bid and resubmit. And so could DMC, because DMC on its own is a small business. If the court viewed and OHA ultimately found that DMC's relationship with its subcontractors for this particular procurement created a sensible subcontractor affiliation, DMC would have the opportunity to change its relationship with subcontractors for the next procurement. How so? Well, if the ruling was that they're not doing enough of the primary and vital requirements, DMC could attempt to do more of whatever the view was of the primary and vital requirements. They would structure the relationship differently. By hotels? Well, probably not by hotels, but there are other transport. They could become more involved with the transportation services, theoretically. But I think more likely, like I said before, the agency would rewrite this solicitation to make more clear that what they really want here is the management and coordination. How do we know that? That's not what the government said. Well, the federal biz ops synopsis says, and this is in the record, in the procurement, they are looking for hotels or property management companies. So they did not intend the interpretation that only hotels could bid this contract. I think it was correctly pointed out earlier that the nowhere in the solicitation doesn't require you to own a hotel. As a matter of fact, to permit you to change your secondary hotel facilities, what small business could own so many hotels that it could conceivably have three and then also possibly more to interchange the secondary facilities? They did not intend hotels to, that you had to own hotels. And I don't think they, it's not reasonable to think that they, in a new solicitation, would change that approach. I mean, this is, they procured this work for a while and it's been a small business set aside for a while. So I think- Your argument is that because they don't have standing, nobody gets to determine whether you qualify as a small business. Well, the way that it worked out in this instance, because they don't have standing, right, they chose the wrong affiliate to, in our view, to pursue this. Because Tenton Falls, they were the fourth priced offeror. They were the third, they knew going in, they were going to be no better than the third priced offeror, just amongst the four affiliated bidders. I just don't think in that situation that an offeror should then get to turn around when they didn't try to win and then protest for years afterwards on the idea that they might try a different approach in a new procurement. So some of the companies that bid were deemed large because of the affiliation and those affiliations are contractual. So when the company goes back to re-bid, it can revise the contract in order to either lessen the affiliation or to eliminate it altogether. And for some other companies, the affiliation is not contractual, it's ownership. It's overlapping ownership or 100% ownership of a subsidiary, let's say. That type of affiliation would not be able to be restructured for a re-bid. Well, in fact, it could. I mean, in theory, you could restructure. They could break those ties. They could sell their ownership stakes. But it's not as easy as rewriting a contractual relationship. It would require a major restructuring. They were found to be affiliated with 30-plus companies by the SBA. So it would take a major overhaul of the way they're set up in order for them to accomplish that for a new bid. OK. Thank you, Mr. Williams. Mr. Daugherty, you have two minutes here, I think. I'll give you two minutes. And I will be brief. Two minutes. As to the standing issue, there is substantial talk about speculation, but that speculation is on both sides. If the court finds for the appellant, this solicitation starts over from zero and must begin at that point. And starting from zero, Tent and Pulse has just as much opportunity and it has just as much a substantial likelihood of winning as any other potential offer were out there. I think the most crucial thing that Mr. Williams said was, government's going to go back and rewrite this. And absolutely they will. This is a... Because on its face, it doesn't solicit management coordination. If they rewrite it in order to make the focus of the solicitation clear and it's rebid on a restricted basis for small businesses, your client would still be unqualified to bid, correct? Potentially. But as was indicated, there are ways that my client could restructure in order to be a small business again. My client was previously determined to be a small business. Have you argued before at this point that you're willing to restructure in order to be able to qualify to rebid on a restricted contract? I don't know whether my client would be willing to again, but it's possible that they could and be eligible and have just as a substantial likelihood of winning as any other company. But at this point, under the affiliation basis that your client has at this point, you can see that they're not qualified to rebid on a restricted contract for small businesses. I do concede that, Your Honor. Yes, the SBA, I think, found and that was not appealed that they were large business. I would disagree with Mr. Williams when he says that these various different kinds of affiliation. Affiliation is going to be determined by the procurement. So in this particular case, the government chose a NAICS code with a $30 million size limit. They could choose another NAICS code that may have a $50 million size limit or they could choose a NAICS code that has a $15 million size limit. A lot can happen when they go back as the affiliate said and change this solicitation. And once they change that solicitation, we start from scratch. All we can do is speculate what the government would do. I do agree that they would go back and rewrite the solicitation or maybe not. Again, I think it's clear in my opinion that the primary and vital services that were solicited were hotel and transportation and that's clear. And I would close with one question and that is in looking at this contract and determining it as the OHA said, it is critical to determine what the primary and vital because that will determine whether or not the ostensible contract or subcontractor rule was violated. Okay, Mr. Doherty. I think we're out of time. Thank you. Can I finish my thought, Your Honor? No, I think we're done. Thank you. Thank all counsel. Case is submitted.